**Lenora B. FULANI, Mamie Moore, Lenora B. Fulani's Committee for Fair Elections, et al., Plaintiffs–Appellants,**

v.

**Joseph H. HOGSETT \*, in his official capacity as Secretary of the State of Indiana, State Election Board of Indiana, Evan Bayh, Governor of Indiana, et al., Defendants–Appellees,**

and

**Carlton E. Curry, Intervening Defendant–Appellee.**

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 15, 1990.\*\*

Decided Nov. 8, 1990.

Rehearing Denied Jan. 14, 1991.

---

\* Pursuant to Fed.R.App.P. 43(c)(1), we have substituted the original appellees' successors to this proceeding.

\*\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be

helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Stephen Dillon, Indianapolis, Ind., and Gary Sinawski, New York City, for plaintiffs-appellants.

David M. Wallman, and Arthur T. Perry, Deputy Attys. Gen., Robert S. Spear, Asst. Atty. Gen., Office of the Attorney General, Peter J. Rusthoven, Barnes & Thornburg, Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

In the 1988 presidential election, plaintiffs Lenora Fulani and Mamie Moore were the respective candidates for President and Vice President of the United States on behalf of the New Alliance Party. They appeared on the presidential ballot in Indiana and forty-nine other states along with the Democratic and Republican candidates. The other plaintiffs in this case include Fulani's election committee, the New Alliance party, a campaign worker, and an Indiana voter who supported the New Alliance party (collectively "New Alliance"). New Alliance claims that Indiana electoral officials denied it equal protection of the laws and violated 42 U.S.C. § 1983 when state officials allowed both the Democratic and Republican presidential candidates on the ballot after the Indiana Secretary of State failed to certify their electoral candidates by August 1, 1988. The district court granted the defendant's motion to dismiss the case prior to the election, and New Alliance appealed.

The Democrats and Republicans selected their candidates for presidential electors at their state party conventions during the summer of 1988. Indiana law also required that the names of these candidates be certified by the Indiana Secretary of State by August 1 before the general election. IND. CODE 3–10–4–5. Then Secretary of State Evan Bayh certified the New Alliance candidates before August 1, 1988, but he did not certify the Republican candi-

dates until August 4, and the Democrats until August 8. Bayh certified all the presidential candidates themselves before September 1, 1988 as required by Indiana law. IND. CODE 3-10-4-5(c). On October 18, 1988, three weeks before the presidential election, Fulani filed this action seeking to remove the Democratic and Republican candidates for President and Vice President from the Indiana ballot. By that time the ballots had already been printed and absentee voting had commenced.

In granting the defendants' motion to dismiss, the district court rejected New Alliance's requests for injunctive relief, declaratory judgment and monetary damages. Regarding the charge that New Alliance would have been treated differently had its electoral candidates not been certified on time, the district court held that this hypothetical problem did not present a case or controversy. The court also stated that there was no equal protection violation because New Alliance had failed to allege any facts showing with particularity intentional and purposeful discrimination. Given the fact that the New Alliance candidates were listed on the ballot, the court rejected a claim brought pursuant to 42 U.S.C. § 1983, because it failed to present a case or controversy and it failed to show that any action by the state defendants deprived New Alliance of any federally secured right. The court then held that New Alliance made no showing of racial discrimination and also dismissed the plaintiff's pendent state law claims.

■ The first question on appeal is whether the request for injunctive relief is moot because the 1988 election is now complete. Although brought before the election, the suit is not moot, because the New Alliance party hopes to field candidates in future Indiana presidential elections. *See, e.g., Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494-95, 23 L.Ed.2d 1 (1969); *Hall v. Simcox*, 766 F.2d 1171, 1172 (7th Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 459 (1985); *Gjertsen v. Board of Election Comm'rs*, 751 F.2d 199, 202 (7th Cir.1984). In addition, the requests for declaratory relief and money

damages present live controversies between the parties and are not moot. *See Brockington v. Rhodes*, 396 U.S. 41, 44, 90 S.Ct. 206, 208, 24 L.Ed.2d 209 (1969).

■ Another issue is whether the plaintiffs have standing to challenge the action of the Indiana officials. In order to have standing, a plaintiff must allege a personal injury fairly traceable to the defendant's allegedly unlawful conduct that is likely to be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). In one sense, the action of the officials allowing the Democrats and Republicans on the ballot did not injure New Alliance because the party was not denied access to the ballot in any way.

■ The real question is whether the increased competition that New Alliance faced is an injury which gives it sufficient standing to bring this case. We believe it does. On account of the decision by the Indiana officials to allow the two major political parties on the ballot, New Alliance faced increased competition which no doubt required additional campaigning and outlays of funds. Without the Republicans and Democrats on the ballot, New Alliance would have gained additional press exposure and could have conceivably won the Indiana election, no small boon for a relatively obscure party that hoped to establish a national presence. We believe that New Alliance's injury is fairly traceable to the action of the Indiana officials who allowed the Democrats and Republicans on the ballot. A grant of damages would redress the increased outlay of campaign money to meet the competition, and declaratory relief would prevent future violations of the Indiana certification law. Therefore we hold that the plaintiffs have standing to bring this suit.

The defendants have also raised the defense of laches, arguing that New Alliance was dilatory in commencing its suit and that it should be denied relief. The last late certification occurred on August 8, 1988. New Alliance claims that it received actual notice of the late filing on October 6, investigated the allegation, and sent a let-

ter on October 13 to Secretary Bayh requesting that the Democrats and Republicans be denied access to the presidential ballot. Bayh denied the request the next day, and New Alliance filed suit on October 18, three weeks before the November 8 general election. On this point, the district court noted:

the actions of the defendant Secretary of State were taken and available for public inspection in' August and early September, 1988. The plaintiffs did not file their complaint until October 18, 1988. As stated previously, the Indiana general election has begun with absentee voting. In this respect the Court believes the defendants present a strong argument for the application of laches.

The question then is whether an election irregularity which has been a matter of public record for eleven weeks prior to an election must be barred when a plaintiff files suit three weeks before the election.

Laches arises when an unwarranted delay in bringing a suit or otherwise pressing a claim produces prejudice to the defendant. *See Herman v. City of Chicago,* 870 F.2d 400, 401 (7th Cir.1989). In the context of elections, this means that any claim against a state electoral procedure must be expressed expeditiously. *See, e.g. Williams v. Rhodes,* 393 U.S. 23, 34–35, 89 S.Ct. 5, 12–13, 21 L.Ed.2d 24 (1968). As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made. The candidate's and party's claims to be respectively a serious candidate and a serious party with a serious injury become less credible by their having slept on their rights. *Kay v. Austin,* 621 F.2d 809, 813 (6th Cir.1980) (laches applied where candidate waited two weeks after he knew he would not be listed on ballot to file suit and preliminary work had already been done for election); *McCarthy v. Briscoe,* 539 F.2d 1353, 1354–55 (5th Cir.1976) (application for emergency injunctive relief denied where entire election process would be disrupted by lawsuit filed on July 30 seeking ballot access to November presidential election).

In this case, New Alliance waited eleven weeks after the certification irregularities were a matter of public record and two weeks after it received actual notice before filing suit. During this time the state proceeded with its election preparations, printed ballots, and commenced absentee balloting. On the basis of these facts, the failure of New Alliance to press its case when it should have known that an injury occurred is fatal to it receiving any relief. Three weeks before the election it would have been extremely difficult, if not impossible, for Indiana to provide another set of ballots. Moreover, the confusion that would have attended such a last-minute change would have posed a risk of interference with the rights of other Indiana citizens, in particular the absentee voters. *See Williams,* 393 U.S. at 35, 89 S.Ct. at 12–13. For this reason we hold that the plaintiff's claim is barred by laches.

Because of the disposition of the case on laches, we do not need to reach the other issues involving equal protection, section 1983, or pendent jurisdiction. The judgment of the district court is

AFFIRMED.